ORIGINAL

FILED
AUG 2 0 2007
U.S. COURT OF FEDERAL CLAIMS

**UNITED STATES COURT OF FEDERAL CLAIMS**

| | |
|---|---|
| NORTHROP GRUMMAN COMPUTING SYSTEMS, INC., Plaintiff, v. THE UNITED STATES OF AMERICA, Defendant. | CASE NO. 07-613 C |

**COMPLAINT**

The plaintiff Northrop Grumman Computing Systems, Inc. ("Northrop Grumman"), by its attorneys, complains of the defendant as follows:

INTRODUCTION

1. This is an action to recover $2,697,558.00 plus interest for breach of contract.

2. This action arises under the Contract Disputes Act of 1978, 41 U.S.C. 601 et seq. and the disputes clause under Delivery Order COW-4-D-1025, as amended, under Contract No. SEWP III, NAS5-01143 for the lease of Oakley Software Licenses to the United States Department of Homeland Security, U.S. Immigration and Customs Enforcement (the "Government") for the period of performance for one twelve-month base year (9/30/04 through 9/30/05), and three twelve-month option years beginning September 30, 2005 through September 30, 2008.

3. The claim is that the Government did not exercise Option Year 1 in accordance with the terms of the Contract. The Government's formal notification of its decision not to exercise Option Year 1 of the Contract is dated September 30, 2005. Exhibit A (a prior e-mail notification is also attached).

4. Jurisdiction is based upon 28 U.S.C. § 1491(a)(1).

5. The plaintiff filed a timely certified claim with the contracting officer by letter dated September 21, 2006. Exhibit B. The certified claim was received by the Government on or about September 25, 2006. Compare Exhibit B delivery date with Exhibit C.

6. The contracting officer issued a final decision denying the claim by letter dated December 29, 2006. Exhibit C.

PARTIES

7. During the relevant time period, the plaintiff Northrop Grumman was a corporation with a usual place of business at 8027 Laurel Lakes Court, Laurel, Maryland 20707.

8. The government agency involved is the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement ("DHS/ICE").

## FACTS

9. On or about September 24, 2004, DHS/ICE and Northrop Grumman Information Technology Group entered into Delivery Order COW-4-D-1025 (the "Delivery Order") under NASA's SEWP III contract no. NAS5-01143 (collectively, the "Contract").

10. The Contract was for the lease of certain Oakley Software licenses ("Oakley Software") for the period of performance of one twelve-month base year (9/30/04 through 9/29/05), and three twelve-month option years beginning September 30, 2005 through September 29, 2008.

11. Prior to the Contract, DHS/ICE completed an Essential Use Statement ("Essential Use Statement"). In the Essential Use Statement, DHS/ICE made the following representations with respect to the Oakley Software:

> The User has an immediate need for, and intends to make immediate use of, all such software, the need for which is not temporary, nor expected to diminish during the full term of the lease. As evidence of the User's intent to retain the software and obtain funding throughout the Lease Term, the following information provides a description of the essential government use intended for the software, together with an understanding of the sources from which payment will be made:. . .
>
> **1. Please describe the use and function of the software**
>
> Software will be used to intercept Data Communications over the Internet for authorized targets under criminal

investigations, utilizing approved Lawful Intercept Court Orders.

2. **What benefits will the software provide (cost savings, productivity, enhancements, etc.)?**

   Benefits provided will be capturing encrypted data, circumventing countermeasures employed by targets to evade Law Enforcement, and more scalable and efficient deployment of intercept solutions from a centralized area.

3. **Why is the software essential to the program and the agency?**

   Currently we have no means of decoding captured data that has been encrypted, and this is the only solution that allows us to ensure no evidence is unplayable simply because the targets are using technology available to each and every person who utilizes the Internet for communication.

4. **What is the mission of the agency and why is the agency essential to the federal government?**

   ICE Mission:
   To prevent acts of terrorism by targeting the people, money, and materials that support terrorist and criminal activities.
   U.S. Immigration and Customs Enforcement (ICE), the largest investigative arm of the Department of Homeland Security (DHS), is responsible for identifying and shutting down vulnerabilities in the nation's border, economic, transportation and infrastructure security.

In other words, the Oakley Software was essential for DHS/ICE to perform its intended function and, therefore, such function cannot be performed without the Oakley Software or its functional equivalent.

12. DHS/ICE also represented in the Essential Use Statement that the source of funds for the Contract "is provided from Forfeiture funds obtained through criminal investigations" and the "next three years budgets include requests for available funding for the payment of the lease."

13. On or about September 29, 2004, Modification A001 ("Mod 1") to the Contract was executed by the Contracting Officer for DHS/ICE. The stated purpose of Mod 1 was "to Incorporate Vendors supplemental leasing terms and conditions inadvertently left out of basic contract." Pursuant to Mod 1, "Vendor shall perform in accordance with attached Statement of Work, leasing terms and conditions in their entirety and in accordance with the terms and conditions of the SEWP III contract."

14. These leasing terms and conditions provide, in part,

> It is hereby mutually understood and agreed that as inducement for Contractor entering into this Agreement, the Department of Homeland Security has represented to the Contractor that the aforementioned Oakley software products are absolutely essential and

> critical to the Government's proper, efficient and economic operation for the full 36 month term of the lease agreement and any renewals thereof. In addition, the Department of Homeland Security has provided required information relative to the essential use of the software Asset that includes, but is not limited to, a description of the currently identified applications to be supported and planned life-cycle operations for the leased software.

(Emphasis added.)

15. The payment terms are set forth in an Exhibit A Schedule attached to the leasing terms and conditions referenced in Mod 1. They are: Payment 1 due 9/30/04 in the amount of $900,000; Payment 2 due 9/30/05 in the amount of $899,186; Payment 3 due 9/30/06 in the amount of $899,186; and Payment 4 due 9/30/07 in the amount of $899,186.

16. On or about October 13, 2004, DHS/ICE accepted the Oakley Software for the base year (9/30/04 through 9/29/05).

17. On or about October 14, 2004, Modification A002 ("Mod 2") to the Contract was executed by the Contracting Officer for DHS/ICE. The stated purpose of Mod 2 was, in part, to "Incorporate revised supplemental leasing terms and conditions" ("Revised Terms"). Mod 2 replaced and revised "Page 1, Para. 1 'Lease'" from the supplemental leasing terms and conditions with the following language, which was attached to Mod 2 as "Attachment A":

1. Lease

(a) This lease, includes 4 payments to be made to the Contractor, or Contractor's Assignee. The Department of Homeland Security shall make all payments, within thirty (30) days after each payment becomes due, unless funding for the lease is unavailable during any fiscal year under which this lease is effective. It is expressly understood and agreed that the Department of Homeland Security shall use its best efforts to seek and utilize funding from all sources, and to request and reserve funds from the annual budget as a first priority designation, to pay the required lease payments under this lease agreement. If the lease is discontinued due to termination for convenience, non-appropriation of funds or non-renewal, as stated above, the Department of Homeland Security agrees that it will not replace the software, nor pursue outsource contracting, with software which performs similar or comparable functions, of which the acquired software was intended to perform, for a period of the remaining full term of the lease or a period of twelve (12) months from the date the Department of Homeland Security discontinues its performance obligations under the lease, whichever is longer.

(Emphasis added.)

18. On or about October 20, 2004, Modification A003 ("Mod 3") to the Contract was executed by the Contracting Officer for DHS/ICE. The stated purpose of Mod 3 was, in part, to change the vendor name to Northrop Grumman Computing Systems.

19. By e-mail dated September 27, 2005, Mae Kim, Contract Specialist of DHS/ICE notified Northrop Grumman "that the Government has decided not to exercise the 1st

option year (09/30/05 - 09/29/06) [of the Contract] due to no appropriation funds available to provide continued service through Oakley leasing agreement."

20. On or about September 30, 2005, Joseph M. Garforth, Jr., Contracting Officer, Acting Chief, IT Branch, Office of Procurement, DHS/ICE, wrote to Northrop Grumman to provide "formal notification of the Government's decision not to exercise Option year #1 (09/30/05 thru 09/29/06) under Delivery Order COW-4-D-1025, Contract No. NAS5-01143, for providing software, hardware, and services."

21. By letter dated February 22, 2006, Northrop Grumman requested further information from DHS/ICE in connection with its "decision not to exercise Option year #1 (09/30/05 thru 09/29/06) under Delivery Order COW-4-D-1025, Contract No. NAS5-01143, for providing software, hardware, and services."

22. On or about April 14, 2006, Northrop Grumman received an undated response to its February 22, 2006 letter from Joseph M. Garforth, Jr., Contracting Officer, Acting Chief, IT Branch, Office of Procurement, DHS/ICE. The response did not provide the requested information, except to state that the "Oakley Leasing Agreement was one of a number of discretionary IT contracts that were

considered to be of insufficient priority to continue to be funded."

23. DHS/ICE is currently using software to perform functions described in the Essential Use Statement. That software performs "similar or comparable functions, of which the [Oakley] software was intended to perform."

24. The software used by DHS/ICE since its "decision not to exercise Option year #1 (09/30/05 thru 09/29/06) under Delivery Order COW-4-D-1025, Contract No. NAS5-01143, for providing software, hardware, and services" must be a replacement of the Oakley Software based on the representations of DHS/ICE in the Essential Use Statement.

25. DHS/ICE did not "use its best efforts to seek and utilize funding from all sources."

26. DHS/ICE did not "request and reserve funds from the annual budget as a first priority designation, to pay the required lease payments under this lease agreement."

27. There were funds available to DHS/ICE sufficient to make the final three lease payments.

28. DHS/ICE has not made and refuses to make the final three payments due under the Contract. Those payments total $2,697,558.00.

29. By letter dated September 21, 2006, Northrop Grumman submitted a certified claim under the Contract to

DHS/ICE based on its "decision not to exercise Option year #1 (09/30/05 thru 09/29/06) under Delivery Order COW-4-D-1025, Contract No. NAS5-01143, for providing software, hardware, and services."

30. By letter dated December 29, 2006, Damon K. McGill, Contracting Officer, DHS/ICE issued a final decision denying the claim of Northrop Grumman.

COUNT I
(Breach of Contract/Warranty)

31. Northrop Grumman restates and incorporates by reference, as if fully set forth herein, the allegations contained in paragraphs 1 through 30.

32. Based on the conduct and actions of DHS/ICE, in part, as set forth above, DHS/ICE has breached its contract with Northrop Grumman and its warranties to Northrop Grumman.

33. By virtue of the breach of the Contract and breach of the warranties, and other conduct, Northrop Grumman is entitled to recover its damages as described in the Contract, including the payments not made under the Contract in the amount of $2,697,558.00, plus interest from the date of the Government's receipt of Northrop Grumman's claim.

WHEREFORE, Northrop Grumman prays that this Court:

(i) Enter judgment for Northrop Grumman on Count I against the defendant for the amount of the final three lease payments of $2,697,558 plus interest, and any other amounts allowed by law; and

(ii) Grant such other and further relief as this Court deems just and proper.

NORTHROP GRUMMAN COMPUTING SYSTEMS, INC.,

By its attorneys,

Looney, Cohen, Reagan & Aisenberg LLP
David C. Aisenberg
33 Broad Street
Boston, MA 02109
T(617) 371-1050
F(617) 371-1051

Dated: August 17, 2007

U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536

U.S. Immigration
and Customs
Enforcement

September 30, 2005

Northrop Grumman Computing System, Inc.
ATTN: Candyce Schmidt
7501 Greenway Center Drive, Suite 1000
Greenbelt, MD 20770

Subject: Notification of not Exercising Option Year #1 under COW-4-D-1025
Oakley Leasing Agreement

Dear Ms. Schmidt:

This letter serves as formal notification of the Government's decision to not exercise Option year #1 (09/30/05 thru 09/29/06) under Delivery Order No. COW-4-D-1025, Contract No. NAS5-01143, for providing software, hardware, and services. Please make the necessary arrangements with the Contracting Officer's Technical Representative (COTR), Michael Dusenberry, to remove the hardware and software from the Government's facilities. This letter confirms previous discussions that representatives from your office had with the COTR and the e-mail notification sent to you on Tuesday, September 25, 2005, by Ms. Mae Kim of my office.

If you have any further questions, please contact me at (202) 514-3630 or Mae Kim, Contract Specialist at (202) 305-8157.

Sincerely,

Joseph M. Garforth, Jr.
Acting Chief, IT Branch
Office of Procurement

cc: Michael Dusenberry, COTR

**Kim, Mae Cha**

**From:** Kim, Mae Cha
**Sent:** Tuesday, September 27, 2005 11:16 AM
**To:** 'Candyce.Schmidt@ngc.com'
**Subject:** FW: Notification of No Option Exercise for COW-4-D-1025

Second try. Please email back to me when you received this email.

Thank you.

Mae

-----Original Message-----
**From:** Kim, Mae Cha
**Sent:** Tuesday, September 27, 2005 9:31 AM
**To:** 'Candyce.Schmidth@ngc.com'
**Cc:** Garforth, Joseph M; Chesney, Robert; Archer, Joshua
**Subject:** Notification of No Option Exercise for COW-4-D-1025

Candyce,

This is to notify you that the Government has decided not to exercise the 1st option year (09/30/05 - 09/29/06) against the subject contract/order due to no appropriation funds available to provide continued service through Oakley leasing agreement.

The Government will take an appropriate action to return all assets being used by the Government IAW paragraph 10 of the leasing agreement upon expiration of the contract (09/29/05).

If you have any further questions regarding this matter, please contact me any time. Thank you very much.

Mae Kim
Contract Specialist
Office of Procurement
BICE/DHS
Tel: 202-305-8157
Fax: 202-616-7876
Email: Mae-cha.Kim@dhs.gov

NORTHROP GRUMMAN

DEFINING THE FUTURE

**Mary Jane Sweeney**
Director, Contracts and Pricing

**Northrop Grumman Computing Systems, Inc.**
8027 Laurel Lakes Court
Laurel, MD 20707
Telephone 301-623-2243 Fax 301-623-2205
MaryJane.Sweeney@ngc.com

September 21, 2006

Joseph M. Garforth, Jr.
Contracting Officer
Acting Chief, IT Branch
Office of Procurement
U.S. Department of Homeland Security
U.S. Immigration and Customs Enforcement
425 I Street, N.W.
Washington, D.C. 20536

**Re: Contract Disputes Act Claim for not Exercising Option Year #1 under COW-4-D-1025 - Oakley Leasing Agreement**

Dear Mr. Garforth:

In accordance with the Contract Disputes Act of 1978, 41 U.S.C. 601 et seq., and the Disputes clause of the Contract, Northrop Grumman Computing Systems, Inc. ("the Contractor") submits this claim to the U.S. Department of Homeland Security, U.S. Immigration and Customs Enforcement ("Government") under Delivery Order COW-4-D-1025, as amended (the "Delivery Order") under Contract No. SEWP III, NAS5-01143 (collectively, the "Contract") for the lease of Oakley Software licenses ("Oakley Software") for the period of performance for one twelve-month base year (9/30/04 through 9/29/05), and three twelve-month option years beginning September 30, 2005 through September 30, 2008. This claim is in the amount of $2,697,558.00, plus interest from the date of the Government's receipt of this claim.

The decision not to exercise the option year beginning September 30, 2005 is reflected in a letter from the Government dated September 30, 2005, which itself refers to a prior communications between the parties, including an e-mail notification. The stated reason for the decision was "due to no appropriation funds available to provide continued service through Oakley leasing." By letter dated February 22, 2006, the Contractor requested further information in connection with that decision. The Department of Homeland Security is a valued customer and we are reluctant to engage in the disputes process. In fact, our February letter was sent in the hope that the Government would explain its decision and show that there was no breach. Unfortunately, the undated Government response, received on April 14, 2006, did not provide the necessary information and, instead, seemed to confirm our concerns. As a consequence, we now find ourselves with no alternative but to file this claim.

The Contractor submits this claim to recover damages resulting from the Government's breach of the provisions of the Contract by failing to use best efforts to seek and utilize available funding from all sources, by failing to reserve funds from the annual budget on a first priority designation, and by replacing the software with another system performing similar or comparable functions.

The Contract, in Amendment #2, provides the following restrictions on the Government's exercise of the options:

1. Lease

(a) This lease includes 4 payments to be made to the Contractor, or Contractor's Assignee. The Department of Homeland Security shall make all payments, within thirty (30) days after each payment becomes due, unless funding for the lease is unavailable during any fiscal year under which this lease is effective. It is expressly understood and agreed that the Department of Homeland Security shall use its best efforts to seek and utilize funding from all sources, and to request and reserve funds from the annual budget as a first priority designation, to pay the required lease payments under this lease agreement. If the lease is discontinued due to termination for convenience, non-appropriation of funds or non-renewal, as stated above, the Department of Homeland Security agrees that it will not replace the software, nor pursue outsource contracting, with software which performs similar or comparable functions, of which the acquired software was intended to perform, for a period of the remaining full term of the lease or a period of twelve (12) months from the date the Department of Homeland Security discontinues its performance obligations under the lease, whichever is longer.

These contractual restrictions, as well as all of the other restrictions contained in the contract, are valid, binding and enforceable against the Government. See, e.g., Northrop Grumman Computing Systems, Inc., GSBCA No. 16367, (June 26, 2006), 2006 WL 1776562; Municipal Leasing Corp. v. United States, 1 Cl. Ct. 771 (1983), and 7 Cl. Ct. 43 (1984). Here the Government has not complied with the contractual restrictions contained in the Contract.

**Breach of Covenant to Seek Funding**

As set forth above, the Contract provides that "the Department of Homeland Security shall use its best efforts to seek and utilize funding from all sources, and to request and reserve funds from the annual budget as a first priority designation, to pay the required lease payments under [the lease]." In the recent decision by the General Services Administration Board of Contract Appeals in Northrop Grumman, supra, the

Board held that such "best efforts" restrictions mean what they say. A copy of that decision is enclosed. The Northrop Grumman decision states, in part,

> Although defining what the term "best efforts" means is difficult, *see* 15 *Nash & Cibnic Report* ¶45 (Aug. 2001), "best efforts contracts are routinely held valid." *Hughes Communications Galaxy, Inc. v. United States,* 998 F.2d 953, 957 n.7 (Fed. Cir. 1993). The most complete definition of the term we have found is contained in *In re Cambridge Biotech Corp.,* 186 F.3d 1356, 1375 (Fed. Cir. 1999), where the Court of Appeals for the Federal Circuit quoted approvingly a state court decision which explains that "'best efforts' requires 'that the party put its muscles to work to perform with full energy and fairness the relevant express promises and reasonable implications therefrom."

Northrop Grumman, supra, at pages 10-11. The decision further explains that the Government could not be found to have used its "best efforts" where it chose to "not fight for funds. . .because other projects had a higher priority" and money was otherwise available for those other projects. Northrop Grumman, supra, at page 11. Here, the Government admits in its April 14, 2006 letter that it voluntarily chose not to use discretionary funds to continue to fund the Contract stating:

> As to the reasons for not exercising this option, this contract and many others relating to Information Technology (IT) programs are funded from appropriated funds allocated to the ICE Office of Chief Information Officer. During September 2005, the IT Branch was notified that this allocation of funds was running into a substantial shortfall from budgeted projections for Fiscal Years 2005 and 2006. This shortfall required that discretionary IT programs be carefully prioritized, and that rigourous decisions be made as to which ones could be funded, and not funded, as of September 2005, and thereafter. The Oakley Lease Agreement was one of a number of discretionary IT contracts that were considered to be of insufficient priority to continue to be funded.

The Contractor's February 22 letter asked the Government to describe what efforts had been used to secure the funds. The Government's response did not describe any efforts. To make matters worse, the April 14, 2006 letter contains statements that can only be interpreted to mean that the Government breached the "best efforts" clause in the Contract. In this regard, the reason offered for not funding is only that the Oakley Software lease "was one of a number of discretionary IT contracts that were considered to be of insufficient priority to continue to be funded." The failure to use discretionary funds, particularly where such funds are used for other IT contracts, cannot be "best efforts" and, therefore, constitutes a breach of the Contract.

Moreover, the Contract at issue here also required not only that "best efforts" be utilized but also that the Government "request and reserve funds from the annual budget as a first priority designation" in order to make the required lease payments. The Government's April 14, 2006 letter states that the Oakley lease agreement was considered "to be of insufficient priority to continue to be funded." This can only be interpreted to mean that the Government breached its contractual obligation to reserve and request funding for the Oakley lease agreement on a first priority basis.

Finally, prior to execution of the Contract, in an Essential Use Statement signed by Joshua Archer, TEO, National Program Manager, the Government identified the source of funding for the Oakley Software as follows: "Funding is provided from Forfeiture funds obtained through criminal investigation." Therefore, there cannot be a non-appropriation unless there are no Forfeiture funds available. The Government records plainly reflect that Forfeiture funds do exist to meet its contractual obligations and that the Government did not attempt to utilize such funds. Therefore, the failure to use such funds to exercise the options constitutes a further breach under the Contract.

**Breach of Non-Substitution Covenant**

Pursuant to the Contract, as set out above, the Government "agrees that it will not replace the software, nor pursue outsource contracting, with software which performs similar or comparable functions" during the entire lease term or a period of twelve (12) months, whichever is longer. The Government is currently utilizing functionally similar equipment and software to perform the functions to be performed under the Contract. This assertion is based, in part, on the statements of an Oakley software representative, who was responsible for the Contract and knowledgeable of the replacement system. The Oakley representative has stated that since the decision to not renew, the Government has reverted to using the same software it used prior to the Oakley software leased under the Contract. In other words, the Government is now using "software which performs similar or comparable functions" to that which it had under the Oakley Leasing Agreement. This is a breach of the non-substitution provision of the Contract.

Further, such a finding is consistent with information provided by the Government in the Essential Use Statement which provided the following responses as to the "Essential Use" of the Oakley Software:

1. **Please describe the use and function of the software**

   Software will be used to intercept Data Communications over the Internet for authorized targets under criminal investigations, utilizing approved Lawful Intercept Court Orders.

2. **What benefits will the software provide (cost savings, productivity, enhancements, etc.)?**

   Benefits provided will be capturing encrypted data, circumventing countermeasures employed by targets to evade Law Enforcement, and more scalable and efficient deployment of intercept solutions from a centralized area.

3. **Why is the software essential to the program and the agency?**

   Currently we have no means of decoding captured data that has been encrypted, and this is the only solution that allows us to ensure no evidence is unplayable simply because the targets are using technology available to each and every person who utilizes the Internet for communication.

4. **What is the mission of the agency and why is the agency essential to the federal government?**

   ICE Mission:
   To prevent acts of terrorism by targeting the people, money, and materials that support terrorist and criminal activities.
   U.S. Immigration and Customs Enforcement (ICE), the largest investigative arm of the Department of Homeland Security (DHS), is responsible for identifying and shutting down vulnerabilities in the nation's border, economic, transportation and infrastructure security.

In other words, the Oakley Software was essential for the Government to perform its intended function and, therefore, such function cannot be performed without the Oakley Software or its functional equivalent.

**Damages**

Breach of contract by the Government entitles a contractor to be placed in as good a position as it would have had the breach not been committed by the Government. The amount for which the Government is liable as a result of the breaches of the Contract identified above is $2,697,558.00, which represents the sum of the remaining unpaid lease payments for the full lease term of the Oakley software, including all option years.

Alternatively, with respect to any Termination for Convenience recovery, the lease provides that,

3. Lease End

* * * * * * * * * *

In the event the Government Terminates for Convenience, such Termination for Convenience shall be in accordance with FAR 52-212-4(l). A methodology that the Government will consider for the calculation of the termination settlement is an amount equal to the present value of the remaining unpaid lease payments discounted at a mutually agreed upon rate.

If the Government's breaches of the Contract are found to constitute a Termination for Convenience, the amount of Termination for Convenience damages owed by the Government would be $2,674,032.80, which represents the present value of the remaining unpaid lease payments discounted at a rate of 3.01%, in accordance with the above calculation specified in the Contract.

**Certification and Conclusion**

Pursuant to Section 6(c)(1) of the Contract Disputes Act of 1978, 41 U.S.C. 605, I hereby certify that this claim is made in good faith, that the supporting data are accurate and complete to the best of my knowledge and belief, that the amount requested accurately reflects the contract adjustment for which I believe the Government is liable, and that I am authorized to certify this claim on behalf of Northrop Grumman.

A final decision on this claim that complies fully with the requirements of Federal Acquisition Regulation ("FAR") 33.211 is requested within sixty (60) days of your receipt of this claim.

Mary Jane Sweeney

Mary Jane Sweeney
Director, Contracts and Pricing

Track Shipments

## Detailed Results

Quick Help

| | | | |
|---|---|---|---|
| **Tracking number** | 857762282861 | **Reference** | 7- |
| **Signed for by** | D.BROWN | **Destination** | WASHINGTON, DC |
| **Ship date** | Sep 21, 2006 | **Service type** | Priority Overnight |
| **Delivery date** | Sep 22, 2006 1:14 PM | | |
| **Status** | Delivered | | |
| **Signature image available** | Yes | | |

| Date/Time | | Activity | Location | Details |
|---|---|---|---|---|
| **Sep 22, 2006** | 1:14 PM | **Delivered** | WASHINGTON, DC | |

Signature proof | Track more shipments

E-mail your detailed tracking results (optional)

Enter your name and e-mail address, submit up to three e-mail addresses, add your message (optional), and click **Submit**. If you include a message, you must enter your name and e-mail address in the fields provided.

**Your Name:**

**Your E-mail Address:**

**To E-mail Address(es):**

**Add personal message:**

Not available for non-English characters

By selecting this check box and the Submit button, I agree to these Terms and Conditions

Submit

**Schmidt, Candyce**

**From:** Sweeney, Mary Jane
**Sent:** Thursday, September 21, 2006 3:56 PM
**To:** Schmidt, Candyce
**Subject:** FedEx Tracking Number

8577 6228 2861

***Mary Jane Sweeney***
***Director, Contracts and Pricing***
*Northrop Grumman Computing Systems, Inc.*
*8027 Laurel Lakes Court*
*Laurel, MD 20707*
**301-623-2243(o) (New)**
**301-623-2205 (f) (New)**
*301-655-3452(c)*

U.S. Department of Homeland Security
425 I Street, NW
Washington, DC 20536

U.S. Immigration and Customs Enforcement

December 29, 2006

Ms. Mary Jane Sweeney
Northrop Grumman Computing Systems, Inc.
8027 Laurel Lakes Court
Laurel, MD 20707

Subject: Contracting Officer's Decision

Dear Ms. Sweeney:

Under the authority of Federal Acquisition Regulation (FAR) 33.211, this is the Contracting Officer's final decision on the claim for not Exercising Option Year #1 under Delivery Order COW-4-D-1025 – Oakley Leasing Agreement (received 25 September 2006).

On September 21, 2006, Northrop Grumman Computing Systems Incorporated, submitted a certified claim in the amount of $2,697,558.00 plus interest from the date of the Government's receipt of this claim (September 25, 2006) for the costs it incurred as a result of the Government's decision not to exercise Option Year 1 under Delivery Order COW-4-D-1025. On November 22, 2006, the Government sent a letter to Northrop Grumman Computing Systems Incorporated notifying you that the Contracting Officer's final decision would by made no later than December 31, 2006

The Contracting Officer has decided that Northrop Grumman Computing Systems Incorporated is not entitled to the $2,697,558.00 plus interest from the date of the Government's receipt of this claim for the costs it incurred as a result of the Government's decision not to exercise Option Year 1 under Delivery Order COW-4-D-1025.

This decision is made based on the Government's contract with Northrop Grumman Computing Systems Incorporated that gave the Government the unilateral option to exercise Option Year 1 of this contract. The Government's decision to not exercise Option Year 1 of this contract was in accordance with the contract.

This is the final decision of the Contracting Officer. You may appeal this decision to the Civilian Board of Contract Appeals. If you decide to appeal, you must, within ninety (90) calendar days from the date you receive this decision, mail or otherwise furnish written notice to the Civilian Board of Contract Appeals and provide a copy to the Contracting Officer from whose decision this appeal is taken. The notice shall indicate that an appeal is intended, reference this decision, and identify the contract by number. With regard to appeals to the Civilian Board of Contract Appeals, you may, solely at your election, proceed under the Board's small claim procedure for claims of $50,000 or less or its accelerated procedure for claims of $100,000 or less. Instead of appealing to the Civilian Board of Contract Appeals, you may bring an action directly in the United States Court of Federal Claims (except as provided in the Contract Disputes Act of 1978, 41 U.S.C. 603, regarding Maritime Contracts) within 12 months of the date you receive this decision.

Except for matters otherwise resolved by this Determination, specifically reserved and excluded from the scope and terms of this Decision as to any entity or person are the following claims of the United States:

(a) Any criminal liability;

(b) Any civil or administrative monetary claim or remedy the United States has or may have related to the performance of the underlying government BPA or Contract to include any modifications and options exercised by the Government;

(c) Any civil or administrative non-monetary claim or remedy the United States has or may have related to the performance of the underlying government BPA or Contract to include any modifications and options exercised by the Government;

(d) Any liability for deficient services, including quality of services; and

(e) Any liability for failure to deliver services due.

If you have any questions or concerns, please do not hesitate to contact me at (202) 353-4993.

Sincerely,

Damon K. McGill
Contracting Officer