# In the United States Court of Federal Claims

No. 07-613C

(Filed Under Seal: June 15, 2011)

Reissued: June 23, 2011[1]

_____

| | |
|---|---|
| NORTHROP GRUMMAN COMPUTING SYSTEMS, INC., | * Government contract case; Motion to<br>* dismiss for lack of jurisdiction – RCFC<br>* 12(b)(1); Contract Disputes Act;<br>* Requirements for valid claim; *Beaconwear* –<br>Plaintiff,         * assignor of proceeds of government contract<br>* was proper entity to file CDA claim;<br>v.                          * Adequate notice of basis of claim; Purpose<br>* of notice requirement; Failure to reveal<br>THE UNITED STATES,         * assignments rendered claim inadequate;<br>* *Severin* doctrine; Jurisdiction lacking;<br>Defendant.             * Motion granted.<br>* |

_____

**OPINION**

_____

*David C. Aisenberg*, Looney, Cohen, Reagan & Aisenberg, LLP, Boston, MA, for plaintiff.

*Armando A. Rodriguez-Feo*, Commercial Litigation, United States Department of Justice, Washington, D.C., with whom was Assistant Attorney General *Tony West*, for defendant.

**ALLEGRA, Judge:**

Plaintiff, Northrop Grumman Computing Systems, Inc. (Northrop), brings this action seeking damages for the alleged breach of an agreement with the Department of Homeland

---

[1] An unredacted version of this opinion was issued, under seal, on June 15, 2011. The parties were given an opportunity to propose redactions, but no such proposals were made. Nevertheless, the court has corrected minor typographical and drafting errors in the original opinion.

Security, Bureau of Immigration and Customs Enforcement.[2]  Under that agreement, Northrop leased surveillance software to ICE to be used in intercepting the internet communications of the targets of criminal investigations arising under Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510, *et seq*.  This case is pending before the court on defendant's motion to dismiss the complaint for lack of jurisdiction.  Having carefully reviewed the parties' briefs on this motion, the court hereby **GRANTS** this motion.

## I.  BACKGROUND[3]

On September 24, 2004, ICE awarded Delivery Order COW-4-D-1025 (Delivery Order) to Northrop pursuant to a preexisting contract between ICE and plaintiff – Contract No. NAS5-01143.  According to the Delivery Order, plaintiff was to lease the Oakley software to ICE and perform specific support services for a one-year base period in return for payment of $900,000, with three one-year options at $800,186 per option year – for a total contract price of $3,597,558 if all three options were exercised.  On September 28, 2004, ICE provided plaintiff with an "essential use statement" that described the intended use of the Oakley software and was designed to facilitate third-party funding for the Oakley software.  From September 30, 2004, to October 18, 2004, ICE executed three modifications to the Delivery Order, adding, *inter alia*, a first priority clause, a best efforts clause, and a nonsubstitution clause.  On October 13, 2004, plaintiff delivered the Oakley software to defendant and was paid $900,000.

To finance the agreement, Northrop relied on ESCgov, with whom Northrop had a preexisting Purchase and Assignment Agreement.  Pursuant to this preexisting agreement, on October 22, 2004, ESCgov entered into Equipment Schedule No. 1, in which it agreed to pay Northrop $3,296,093 in exchange for Northrop's assignment to ESCgov of any payments it received under the Delivery Order.  On November 19, 2004, ESCgov assigned its rights under Equipment Schedule No. 1 to Citizens Leasing Corporation, n/k/a RBS Citizens, N.A. (Citizens), in exchange for $3,325,252.16.  Neither plaintiff, ESCgov, nor Citizens ever notified ICE of these assignments.

On September 30, 2005, ICE informed plaintiff that it would not exercise the first one-year option due to a lack of funds.  On September 21, 2006, Northrop filed a "claim" with the contracting officer pursuant to the Contract Disputes Act of 1978 (the CDA), 41 U.S.C. § 601, *et seq.*, "to recover damages resulting from the Government's breach of the provisions of the

---

[2] The Homeland Security Act of 2002, Pub. L. No. 107-296, 116 Stat. 2135 (Nov. 25, 2002), created the Department of Homeland Security (DHS).  The Act also consolidated the United States Immigration and Naturalization Service and the United States Customs Service into a newly-formed Bureau of Immigration and Customs Enforcement, which is now known as United States Immigration and Customs Enforcement (ICE).

[3] These facts are largely drawn from plaintiff's complaint, and, for purposes of this motion, are assumed to be correct.  *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

[Delivery Order] by failing to use best efforts to seek and utilize available funding from all sources, by failing to reserve funds from the annual budget on a first priority designation, and by replacing the software with another system performing similar or comparable functions." The claim requested damages of $2,697,558, because defendant's breach of contract entitled "a contractor to be placed in as good a position as it would have had the breach not been committed by the Government." Alternatively, "if the Government's breaches of the Contract are found to constitute a Termination for Convenience, the amount of . . . damages owed by the Government would be $2,674,032.80." A Northrop official certified that the claim was "made in good faith," "accurate and complete" and stated an accurate damages amount for which defendant was liable. The claim did not mention ESCgov, Citizens or any of the aforementioned assignments. On December 29, 2006, the contracting officer denied this claim.

On August 20, 2007, plaintiff filed a complaint in this court, asserting that defendant breached the Delivery Order by failing to seek funding and exercise the options. The complaint averred that, as a result of this breach, "Northrop Grumman is entitled to recover its damages as described in the contract, including the payments not made under the Contract in the amount of $2,697,558.00, plus interest." On May 20, 2010, the parties' cross-motions for summary judgment were denied, and after supplemental discovery, trial was scheduled to begin on June 13, 2011. On May 13, 2011, defendant filed a motion to dismiss for lack of jurisdiction pursuant to RCFC 12(b)(1), asserting that Northrop had submitted a claim to the contracting officer that failed to provide adequate notice of the nature of the claim and to reveal that the claim was for the losses of a third party. On May 27, 2011, plaintiff filed its response, and on June 2, 2011, defendant filed its reply. On June 3, 2011, the court cancelled the aforementioned trial.

## II.   DISCUSSION

Deciding a motion to dismiss "starts with the complaint, which must be well-pleaded in that it must state the necessary elements of the plaintiff's claim, independent of any defense that may be interposed." *Holley v. United States*, 124 F.3d 1462, 1465 (Fed. Cir. 1997); *see also Bell Atl. Corp.*, 550 U.S. at 555. The plaintiff must establish that the court has subject matter jurisdiction over its claims. *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988); *Klamath Tribe Claims Comm. v. United States*, 97 Fed. Cl. 203, 208 (2011). The court may look beyond the pleadings and "inquire into jurisdictional facts" to determine whether jurisdiction exists. *Rocovich v. United States*, 933 F.2d 991, 993 (Fed. Cir. 1991). RCFC 12(d) provides that if "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment." But, this provision "does not apply to a motion made under Rule 12(b)(1) to dismiss for lack of jurisdiction over the subject matter," under which the court undoubtedly "may address matters outside the pleadings." *Reed Island–MLC, Inc. v. United States*, 67 Fed. Cl. 27, 32 (2005) (citing *Toxgon Corp. v. BNFL, Inc.*, 312 F.3d 1379, 1383 (Fed. Cir. 2002)); *see also Petro–Hunt, L.L.C. v. United States*, 90 Fed. Cl. 51, 58 (2009).

The United States "is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Sherwood*, 312 U.S. 584, 586 (1941) (citations omitted); *see also Dolan v. U.S. Postal Serv.*, 546 U.S. 481, 498 (2006); *Hercules Inc. v. United States*, 516 U.S. 417, 422 (1996). This

court has jurisdiction "'only of those [claims] which by the terms of some act of Congress are committed to it.'" *Hercules*, 516 U.S. at 423 (quoting *Thurston v. United States*, 232 U.S. 469, 476 (1914)).  Such statutes constitute "waiver[s] of sovereign immunity [that] must be strictly construed in favor of the sovereign." *Orff v. United States*, 545 U.S. 596, 601-02 (2005); *see also Lane v. Pena*, 518 U.S. 187, 192 (1996).

One such waiver statute, the CDA, "was enacted to 'provide[] a fair, balanced, and comprehensive statutory system of legal and administrative remedies in resolving government contract claims.'" *Winter v. FloorPro, Inc.*, 570 F.3d 1367, 1369 (Fed. Cir. 2009) (quoting S. Rep. No. 95-1118, at 1 (1978)).  Before the court may exercise jurisdiction under this statute, *see* 41 U.S.C. § 609(a), there must be "both a valid claim and a contracting officer's final decision on that claim." *M. Maropakis Carpentry, Inc. v. United States*, 609 F.3d 1323, 1327 (Fed. Cir. 2010); *see also James M. Ellett Constr. Co., Inc. v. United States*, 93 F.3d 1537, 1541-42 (Fed. Cir. 1996).  Because the CDA itself does not define when this claim requirement is satisfied, the Federal Circuit has looked to the Federal Acquisition Regulation (FAR) for guidance on this count.  *See*, *e.g.*, *Scott Timber Co. v. United States*, 333 F.3d 1358, 1365 (Fed. Cir. 2003).  The FAR defines a "claim" as "a written demand or written assertion by one of the contracting parties seeking, as a matter of right, the payment of money in a sum certain, the adjustment or interpretation of contract terms, or other relief arising under or relating to the contract." 48 C.F.R. § 2.101; *see Reflectone, Inc. v. Dalton*, 60 F.3d 1572, 1575 (Fed. Cir. 1995).  "While a CDA claim need not be submitted in any particular form or use any particular wording," the Federal Circuit has stated, "it must contain 'a clear and unequivocal statement that gives the contracting officer adequate notice of the basis and amount of the claim.'" *M. Maropakis Carpentry*, 609 F.3d at 1327 (quoting *Contract Cleaning Maint., Inc. v. United States*, 811 F.2d 586, 592 (Fed. Cir. 1997)); *see also Scott Timber Co.*, 333 F.3d at 1365.

In the case *sub judice*, on September 21, 2006, Northrop sent the contracting officer a letter that it asserts was a "claim" under the CDA.  Defendant contends otherwise.  It argues that this claim was deficient because it failed to reveal that Northrop had assigned its rights under the contract to ESCgov, which, in turn, had assigned those rights to Citizens.  Defendant asseverates that Northrop should have revealed that it was seeking damages on behalf of a second-level assignee.  Indeed, defendant questions whether, after the assignments, Northrop remained the proper party to file such a claim under the contract.

Turning to the latter question first, the court is persuaded that Northrop was the proper party to file the claim here.  Northrop relies heavily, in this regard, upon *Beaconwear Clothing Co. v. United States*, 355 F.2d 583 (Ct. Cl. 1966).  In that case, Beaconwear, a clothing manufacturer, entered into a contract with the government to produce military coats. *Id*. at 585. Subsequently, Beaconwear subcontracted the work to a third party, Spiotta, and assigned its right to receive payments under the contract to two other parties.  *Id*.  The Court of Claims held that Spiotta could not pursue a claim against the government and that the assignments were null and

- 4 -

void, as against the United States, under the Assignment of Claims Act, 31 U.S.C. § 3727. *Id*. at 589.[4] The court, however, rejected the notion, advanced by defendant, that, by virtue of the subcontract and assignments, Beaconwear could no longer bring a claim against the United States, stating:

> Beaconwear thus remains the only party which has a legal claim to the amount due under the contract. It alone signed the contract; all the arrangements and adjustments were negotiated and executed solely in its name and all administrative appeals were prosecuted in its name. It was the prime contractor on [the] contract [] and has been held responsible by defendant for performance at all times.

*Id*. at 591. But for a counterclaim, the court was prepared to allow Beaconwear to recover on its original contract claim. *Id*.

There is little doubt that, as in *Beaconwear*, Northrop's assignment here ran afoul of 31 U.S.C. § 3727. While that section allows for assignments to a "financing institution of money due or to become due under a contract," 31 U.S.C. § 3727(c), and ESCgov arguably qualifies as such an institution, Northrop admits that it did not notify defendant of its assignment, as is required by the statute. *See* 31 U.S.C. § 3727(c)(3); *Uniroyal, Inc. v. United States*, 454 F.2d 1394, 1396 (Ct. Cl. 1972). Accordingly, the assignment of Northrop's claims under the ICE contract was null and void, as against the United States. *See McKenzie v. Irving Trust Co.*, 323 U.S. 365, 369 (1945) (discussing the impact of violating this statute); *Martin v. Nat'l Sur. Co.*, 300 U.S. 588, 594 (1937) (same); *United States v. Gillis*, 95 U.S. 407 413 (1877); *Uniroyal*, 454 F.2d at 1396 (same). That does not mean, however, that Northrop forfeited its breach of contract claim against the United States. *Beaconwear*, instead, makes clear that the invalidation of an assignment leaves the original contractor, in this case, Northrop, with the claim. "[A]n attempted assignment of a claim against the United States does not forfeit the claim," the Court of Claims would later confirm, but rather "leaves the claim where it was before the purported assignment." *Colonial Navigation Co. v. United States*, 181 F. Supp. 237, 240 (Ct. Cl. 1960). Based on *Beaconwear* and its progeny, this court, therefore, concludes that Northrop was the proper party to bring the claim in question.[5]

---

[4] Section 3727(b) of Title 31, antecedents of which date back to 1846, states that the assignment of a claim against the United States "may be made only after a claim is allowed, the amount of the claim is decided, and a warrant for payment of the claim has been issued." In a similar vein, another provision of the Anti-Assignment Act, 41 U.S.C. § 15(a), provides that "[n]o contract or order, or any interest therein, shall be transferred by the party to whom such contract or order is given to any other party, and any such transfer shall cause the annulment of the contract or order transferred, so far as the United States is concerned." *See Fireman's Fund Ins. Co. v. England*, 313 F.3d 1344, 1349 (Fed. Cir. 2002) (discussing the interrelationship of these statutes).

[5] *See Sun Cal, Inc. v. United States*, 21 Cl. Ct. 31, 37 (1990) (applying the holding in *Beaconwear* to a CDA claim); *Rodgers Constr., Inc.*, 92-1 B.C.A. ¶ 24,503 (1991) (same);

But did Northrop's letter supply the contracting officer with "adequate notice of the basis" for the claim, as required by the CDA? The answer to this question depends upon a "logical, common sense analysis" of the facts and circumstances of this case. *Transamerica Ins. Corp. v. United States,*, 973 F.2d 1572, 1579 (Fed. Cir. 1992); *see also Rosinka Joint Venture*, 97-1 B.C.A. ¶ 28,653 (1996).

Before turning to this analysis, it is well to note the four purposes that the "adequate notice" requirement serves within the broader context of the CDA: First, compliance with the requirement permits the contracting officer to give meaningful, reasoned consideration to the claim, on a case-by-case basis. *See PAE GmbH Planning & Constr.*, 92-2 B.C.A. ¶ 24,920 (1992).[6] Second, consistent with the broader goals of the CDA, requiring that the basis of the claim be revealed is designed to "induce the settlement of claims before the litigation process commences." *Westclox Military Prods.*, 81-2 B.C.A. ¶ 15,270 (1981); *see also J.S. Alberici Constr. Co., Inc.*, 97-1 B.C.A. ¶ 28,639 (1996); *Blake Constr. Co.*, 88-2 B.C.A. ¶ 20,552 (1988) ("the statement of claim must provide a basis for meaningful dialogue between the parties aimed toward settlement or negotiated resolution of the claim if possible"). Third, whether *vel non* the case is settled, compliance with this requirement allows for "adequate identification of the issues to facilitate litigation should that be necessary following issuance of the decision." *Blake Constr. Co.*, 88-2 B.C.A. ¶ 20,552; *see also PAE GmbH Planning & Constr.*, 92-2 B.C.A. ¶ 24,920; *Gauntt Constr. Co., Inc.*, 87-3 B.C.A. ¶ 20,221 (1987). Finally, the notice requirement buttresses

---

*Fireman's Fund/ Underwater Constr., Inc.*, 87-3 B.C.A. ¶ 20,007 (1987) (same); *see also Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 794 (D.C. Cir. 1983), *cert. denied*, 467 U.S. 1210 (1984); *Tuftco Corp. v. United States*, 614 F.2d 740, 744 n.4 (Ct. Cl. 1980); *Kenrich Corp. v. Miller*, 377 F.2d 312, 314 (3rd Cir. 1967); *Wall Indus., Inc. v. United States*, 10 Cl. Ct. 82, 106 (1986); *K & R Serv. Co., Inc. v. United States*, 568 F. Supp. 38, 40 (D. Mass. 1983); J. Steadman, David Schwartz & Sidney Jacoby, Litigation with the Federal Government 291 (2d ed. 1983) ("The effect of the [Anti-Assignment] Act is upon the assignment, not upon the claim. The assignor can still bring suit.").

Defendant attempts to parry plaintiff's reliance on *Beaconwear* by citing *First Hartford Corp. Pension Plan & Trust v. United States*, 194 F.3d 1279, 1289 (Fed. Cir. 1999). Defendant reads *First Hartford* as enumerating an exhaustive list of exceptions to the privity requirement and deems it significant that this list does not mention assignments. But, this is hardly an opportunity to apply the maxim, *inclusio unius est exclusio alterius*. To the contrary, the Federal Circuit broadly explained that "the common thread that unites these exceptions is that the party standing outside of privity by contractual obligation stands in the shoes of a party within privity." *Id.* at 1298. This rationale, of course, applies equally well to assignments.

[6] *See also EEC Int'l Corp. v. United States*, 43 Fed. Cl. 359, 365-66 (1999); *Holk Dev., Inc.*, 90-3 B.C.A. ¶ 23,086 (1990) (citing numerous cases); *Marine Constr. & Dredging, Inc.*, 90-1 B.C.A. ¶ 22,573 (1990); *Dillingham Shipyard*, 84-1 B.C.A. ¶ 16,984 (1983); John Cibinic, Jr., Ralph C. Nash, Jr. & James F. Nagle, Administration of Government Contracts 1264 (4th ed. 2006).

other CDA claim requirements, *e.g.*, the requirement that claims in excess of $100,000 be certified, thereby ensuring the integrity of the overall claims process. *See Skelly & Loy v. United States*, 685 F.2d 414, 418 n.11 (Ct. Cl. 1982); *Mega Constr. Co., Inc. v. United States*, 29 Fed. Cl. 396, 440 (1993).[7]

In short, "[t]he notice requirement is not a mere technicality," but "serves to make the process of evaluating, settling, and litigating claims both fair and more efficient." *Quillen v. United States*, 89 Fed. Cl. 148, 151 (2009); *see also PAE GmbH Planning & Constr.*, 92-2 B.C.A. ¶ 24,920. In enforcing this requirement, this court must not only keep in mind these underlying purposes, but also that the CDA is "a statute waiving sovereign immunity, which must be strictly construed." *Cosmic Constr. Co. v. United States*, 697 F.2d 1389, 1390 (Fed. Cir. 1982); *see also Winter*, 570 F.3d at 1371. It is important, as well, that the court view the adequacy of the claim not in terms of what it or the parties knows now, after years of litigation, but in terms of what the contracting officer needed to know when he received Northrop's "claim" back in 2006. Viewing the facts through the latter prism, the court concludes that, by failing to reveal that it was sponsoring a claim on behalf of a second-level assignee, Northrop prevented the contracting officer from giving meaningful consideration to a host of issues raised by the assignments.

Several of these issues involve the validity of the assignments, as against the United States, under the Anti-Assignment Act. While Northrop now admits that the assignments were invalid as against the United States, it did not always have this view. Indeed, until it briefed the current motion, Northrop apparently believed that the assignments were valid and that it was sponsoring a claim against the United States on behalf of the second-level assignee, Citizens. But, remarkably, it did not reveal this sponsorship – or even the existence of the assignments – to the contracting officer when it filed its claim. *Per contra*. It appears that Northrop's claim was drafted carefully to avoid mentioning these matters – consistently framing its various requests in terms of what the government was obliged to pay, rather than what Northrop (in reality, Citizens) was owed.[8] The contracting officer ought to have been informed about the assignments, so that

---

[7] The CDA requires, for claims in excess of $100,000, that the contractor –

> certify that the claim is made in good faith, that the supporting data are accurate and complete to the best of his knowledge and belief, that the amount requested accurately reflects the contract adjustment for which the contractor believes the government is liable, and that the certifier is duly authorized to certify the claim on behalf of the contractor.

41 U.S.C. § 605(c)(1). This requirement is designed to "push contractors into being careful and reasonably precise in the submission of claims to the contracting officer." *Tecom, Inc. v. United States*, 732 F.2d 935, 937 (Fed. Cir. 1984); *see also AAB Joint Venture v. United States*, 75 Fed. Cl. 123, 128 (2007).

[8] Thus, for example, Northrop's claim stated: "The amount for which the Government is liable as a result of the breaches of the Contract identified above is $2,697,558.00, which represents the sum of the remaining unpaid lease payments for the full lease term of the Oakley

he could assess, in the first instance, whether the Anti-Assignment Act applied and, correspondingly, whether paying Northrop would expose the United States to the whipsawing financial risks that the Act is designed to minimize. *See United States v. Aetna Cas. & Sur. Co.*, 338 U.S. 366, 373 (1949) (fundamental purpose of the Anti-Assignment Act is to "prevent possible multiple payment of claims, . . . and to enable the Government to deal only with the original claimant"); *United States v. Shannon*, 342 U.S. 288, 291-92 (1952) (Act designed to prevent defendant from being harassed by multiple claimants and to preserve defenses against the assignor that may be inapplicable to the assignee). Yet, Northrop kept the contracting officer in the dark.

By failing to reveal the assignments, Northrop also prevented the contracting officer from considering important issues involving damages. Under the so-called *Severin* doctrine, Northrop was entitled to recover damages under its claim only if it remained financially obligated to its assignee upon defendant's breach. In *Severin v. United States*, 99 Ct. Cl. 435 (1943), *cert. denied*, 322 U.S. 733 (1944), two partners, acting as a prime contractor, sought to recover from the government costs incurred by their subcontractor. The Court of Claims held that the partners had standing to bring suit for breach of contract only if they could show that they were actually damaged as the result of the breach. 99 Ct. Cl. at 442. This condition, the court held, derived from the scope of the consent granted by the United States in waiving it sovereign immunity, which waiver does not cover suits for nominal damages. *Id.* at 443.[9] The court held that the "[p]laintiffs therefore had the burden of proving, not that someone suffered actual damages from the defendant's breach of contract, but that they, plaintiffs, suffered actual damages." *Id*. The court found that the plaintiffs could meet this burden by showing that "they, in the performance of their contract with the Government became liable to their subcontractor for the damages which the latter suffered." *Id*. The court, however, determined that the plaintiffs instead had "protected themselves from any damage by way of liability over to the subcontractor for such breaches of contract by the Government." *Id*. And, in that instance, the court concluded that the partners could not recover for losses suffered by their subcontractor, finding that the law forbade them from "merely accommodating another person who was damaged, by letting that other person use, for the purposes of litigation, the name of plaintiffs, who had a contract and could properly have sued if they had been damaged." *Id*. at 444.

---

software, including all option years." In alternatively seeking termination for convenience damages, Northrop again shifted the focus to what defendant owes rather than discussing to whom damages are owed: "If the Government's breaches of the Contract are found to constitute a Termination for Convenience, the amount of . . . damages owed by the Government would be $2,674,032.80, which represents the present value of the remaining unpaid lease payments discounted at a rate of 3.01%, . . ."

[9] In *Severin* the court relied on one of the "Gold Clause" cases, *Nortz v. United States*, 294 U.S. 317, 327 (1935), where the Supreme Court stated that "the Court of Claims has no authority to entertain the action, if the claim is at best one for nominal damages." *Accord Perry v. United States*, 294 U.S. 330, 355 (1935); *Marion & Rye Valley Ry. Co. v. United States*, 270 U.S. 280, 282 (1926).

*Severin* holds that a prime contractor cannot recover on behalf of a subcontractor unless the former has reimbursed the latter or is liable to make a reimbursement. "These are the only ways in which the damages of the subcontractor can become, in turn, the damages of the prime contractor, for which recovery may be had against the Government." *J.L. Simmons Co. v. United States*, 304 F.2d 886, 888 (Ct. Cl. 1962).[10] While the *Severin* doctrine "has been narrowly construed," *United States v. Johnson Controls, Inc.*, 713 F.2d 1541, 1552 & n.8 (Fed. Cir. 1983); *Blount Bros. Constr. Co. v. United States*, 346 F.2d 962, 964-65 (Ct. Cl. 1965), courts have not hesitated to hold that it applies to breach of contract actions under the CDA, even though that statute was enacted thirty-five years after *Severin* was decided.[11] They have done so recognizing that the sovereign-immunity/damages concepts underlying the doctrine apply as much to the CDA, as they do to the Tucker Act. *See Johnson Controls*, 713 F.2d at 1550-51; *Cramer Alaska, Inc.*, 96-1 B.C.A. ¶ 27,971 (1995).

Indeed, although the *Severin* doctrine is most closely identified with cases involving subcontracts, it has been applied in other factual contexts, including those involving assignments. The latter was the case in *Keydata Corp. v. United States*, 504 F.2d 1115 (Ct. Cl. 1974), in which the Court of Claims invoked the doctrine, albeit finding that the assignor remained liable to the assignee for damages deriving from the government's alleged breach and, therefore, had "suffered enough of a legal injury to bring suit." *Id*. at 1121. *Keydata*, it turns out, is but one of several cases involving assignments in which *Severin* has been applied in determining whether damages were owed and, correspondingly, whether sovereign immunity was waived. *See Am. Nat'l Bank & Trust Co. of Chicago v. United States*, 22 Cl. Ct. 7, 15-16 (1990) (applying *Severin* in analyzing ability of assignee to maintain suit); *Pan Arctic Corp. v. United States*, 8 Cl. Ct. 546, 548-49 (1985) (same); *Folk Constr. Co., Inc. v. United States*, 2 Cl. Ct. 681, 685-86 (1983)

---

[10] *See also W.G. Yates & Sons Constr. Co., Inc. v. Caldera*, 192 F.3d 987, 991 (Fed. Cir. 1999) (under the *Severin* doctrine, a prime contractor may bring suit if it "itself is injured by the acts of the government"); *E.R. Mitchell Constr. Co. v. Danzig*, 175 F.3d 1369, 1370 (Fed. Cir. 1999) ("*Severin* thus limited the government's exposure to such pass-through suits to the situations in which the prime contractor is liable for the subcontractor's costs. Absent such proof of prime contractor responsibility, the government retains its sovereign immunity from suit against it.").

[11] The limitations placed on the *Severin* doctrine over the years have little or nothing to do with its basic thrust, but rather focus on: (i) whether a given lawsuit is for breach of contract – if it is, *Severin* applies, and if it is not (as would be true in the case of an equitable adjustment), *Severin* does not apply, *see E.R. Mitchell Constr. Co.*, 175 F.3d at 1370-71; *Blount Bros Constr. Co.*, 346 F.2d at 964-65; and (ii) what defendant must show in order to prove that a contractor has been completely exonerated by a contract clause or release, *see, e.g., J.L. Simmons Co.*, 304 F.2d at 888-89; *Donovan Constr. Co. v. United States*, 149 F. Supp. 898, 900, *cert. denied*, 355 U.S. 826 (1957). *See also* Ralph C. Nash & John Cibinic, "The Severin Doctrine: It's Still Barely Alive and Well," 4 No. 11 Nash & Cibinic Rep. ¶ 63 (1990).

(same as to assignment arising out of settlement agreement).[12] That *Severin* has been applied in this context is not surprising given the breadth of its rationale, no aspect of which depends specifically upon the existence of a contractor-subcontractor relationship. Rather, at bottom, the doctrine represents judicial recognition that the United States is not liable in suit to the holder of a claim unless that holder is actually damaged by a breach. Such liability does not arise if a subsidiary agreement exculpates the original claimant from any liability in the event of a government breach – and this is true whether the exoneration is accomplished via a subcontract, an assignment, or some other form of arrangement. Any other finding offends logic.

Strictly speaking, the question here, however, is not whether the *Severin* doctrine requires dismissal of this action. This court thus need not decide whether the assignment documents here exculpated Northrop from any liability. The court must rather decide whether Northrop should have alerted the contracting officer to the assignments, so that the latter could have considered, *ab initio*, whether Northrop was injured by defendant's actions. And everything points to the conclusion that Northrop should have afforded the contracting officer this opportunity. Its failure to do so is particularly troubling given that the *Severin* doctrine is an affirmative defense that must be raised by defendant. Thus, defendant bears the burden of establishing that the claimant has been completely exonerated against claims brought by an assignee. *See W.G. Yates & Sons Constr. Co.*, 192 F.3d at 991; *J.L. Simmons Co.*, 304 F.2d at 888. And, the Federal Circuit has held that if defendant fails to raise the *Severin* doctrine on a timely basis, it waives the defense. *See E.R. Mitchell Constr. Co.*, 175 F.3d at 1371; *Haddon Housing Assocs., LLC v. United States*, 92 Fed. Cl. 8, 17 (2010); Joel D. Heusinger, "Practical Concerns in Prosecuting Pass-Through Claims," 25-SPG Construction Law. 26, 27 (2005). Accordingly, allowing Northrop – or any other contractor, for that matter – to withhold the fact that it has assigned its claim against defendant not only prevents the contracting officer from analyzing whether the claimant has truly suffered damages, but might prejudice defendant's ability to mount a defense to the claim.

In sum, the court finds that Northrop's putative claim did not "contain 'a clear and unequivocal statement that [gave] the contracting officer adequate notice of the basis'" of its claim. *M. Maropakis Carpentry*, 609 F.3d at 1327 (quoting *Contract Cleaning Maint., Inc.*, 811 F.2d at 592). At the least, Northrop needed to reveal that it had assigned its claim to a third party and was pursuing this matter as a sponsor. Revealing these facts was important, not only to alert the contracting officer to the potential application of the Anti-Assignment Act and *Severin* doctrine, but also to put him on notice as to the possible relevancy of a host of other issues that

---

[12] *See also A.J. Hodges Indus., Inc. v. United States*, 355 F.2d 592, 598 (Ct. Cl. 1966) (applying *Severin* in a takings case); *Sperry Corp.*, 87-2 B.C.A. ¶ 19,844 (1987) (applying *Severin* in a bid protest action). It should be noted that the invalidation of the assignment of a claim, as against the United States, under the Anti-Assignment Act does not obviate the necessity of determining whether the assignment immunized the original contractor from being damaged by a breach. Despite the impact of the Anti-Assignment Act on the rights and obligations of the United States, the subject assignment remains enforceable as between the parties thereto. *See Segal v. Rochelle*, 382 U.S. 375, 384 (1966); *St. John Marine Co. v. United States*, 92 F.3d 39, 45 (2d Cir. 1996).

have been associated with sponsored or "pass-through" claims.[13]  Northrop did not have the right to keep these facts *in pectore*.  For the court to rule otherwise risks converting the CDA claims process into a high-stakes game of cat and mouse, in which some contractors might hope to catch the contracting officer unawares.  Those inclined to forgive such gamesmanship in conferring more latitude upon CDA claimants would be well advised to remember that the filing of a claim is not merely a prerequisite to suit – a way-station along the path to the courthouse – but, rather, a current demand "for the payment of money in a sum certain."  48 C.F.R. § 2.101.  In fact, Congress created the CDA claims process with the expectation that the wide majority of claims would be resolved by the contracting officer and go no further.[14]  Consistent with that intent, a CDA claim ought to put the contracting officer on notice of all critical operative facts, lest a claim that should be denied be granted (or vice-versa).[15]  And that means that such a claim ought to reveal that it is only being sponsored by the original contractor.

This is not to say that Northrop is guilty of any artfulness here.  Nor is to say that its claim needed to discuss any of the legal issues described above.  The decisional law does not require this and, instead, provides that a contractor may raise different legal theories for recovery than those disclosed in the claim provided "they arise from the same operative facts [and] claim essentially the same relief."  *Scott Timber Co.*, 333 F.3d at 1365, *see also Ace Constructors, Inc. v. United States*, 499 F.3d 1357, 1361 (Fed. Cir. 2007).  A CDA claim is not a complaint; nor should its adequacy be adjudged as such.  *Cf. Aschcroft v. Iqbal*, 129 S. Ct. 1937 (2009); *Bell Atl. Corp.,* 550 U.S. 544.  On the other hand, it would be wrong for this court to undercut Congress'

---

[13] Various commentators have summarized these issues at length.  *See* 1A-6 Government Contracts: Law, Admin. & Proc. § 6.80 (2011); 3 Karen L. Manos, Government Contract Cost & Pricing § 89.4 (2d ed. 2011); McKenna Long & Aldridge and Ronald A. Kienlen, Government Contract Disputes §§ 17.15-17.16 (2010); Steven W. Feldman, Government Contract Guidebook § 25.4 (4th ed. 2010); John Cibinic, Jr., Ralph C. Nash, Jr., & James F. Nagle, Administration of Government Contracts 675-78, 1247-52 (4th ed. 2006).

[14] As noted by the Federal Circuit in *Reflectone*, one of the purposes of the CDA was the "settlement of disputes at the administrative level, short of litigation."  60 F.3d at 1581; *see also Folk Constr. Co. v. United States*, 226 Ct. Cl. 602, 604 (1981); S. Rep. No. 95-1118, at 1 ("[t]he act's provisions help to induce resolution of more contract disputes by negotiation prior to litigation . . . ."); FAR § 33.204 ("The Government's policy is to try to resolve all contractual issues in controversy by mutual agreement at the contracting officer's level.").

[15] Plaintiff entirely misses this point in suggesting that that there is no problem here because "[t]his is not a case where the contracting officer approved a claim based on potentially inaccurate information," but rather one in which "the contracting officer denied Northrop's claim."  As with other questions involving jurisdiction and sovereign immunity, courts do not assess the adequacy of a document asserted to be a claim on a *post hoc*, "no harm, no foul" basis.  (This is the CDA, after all, not the NBA).  Nor does the law require less of a contractor who thinks its claim will be denied than of one who thinks its claim will be granted.  *See Wujick v. Dale & Dale, Inc.*, 43 F.3d 790, 793 (3d Cir. 1994) (rejecting the notion that an administrative exhaustion requirement could be overlooked under a "no-harm, no-foul rule").

aims in imposing the CDA claim requirement by construing that requirement to allow a claimant to omit key operative facts from its claim, particularly those that the contracting officer, in focusing only on the performance of the contract at hand, might never discover. *See United States v. Tohono O'Odham Nation*, 131 S. Ct. 1723, 1730 (2011) ("[C]ourts should not render statutes nugatory through construction."). Here, key operative facts inexplicably were not disclosed – facts that went to the essential nature of Northrop's claim. Based on that failure, the court must conclude that Northrop's "claim" did not meet the requirements of the CDA, thereby depriving this court of jurisdiction over this lawsuit.

## III. CONCLUSION

Based on the foregoing, the court **GRANTS** defendant's motion to dismiss the complaint under RCFC 12(b)(1). [16] The Clerk is hereby ordered to dismiss the complaint, without prejudice.

**IT IS SO ORDERED**.[17]

s/ Francis M. Allegra
Francis M. Allegra
Judge

---

[16] The court is mystified as to why defendant did not file its motion to dismiss until a month before the trial scheduled in this case (since cancelled). The timing of this motion is all the more puzzling as plaintiff had previously identified, as fact witnesses, representatives from the two assignees involved and because attorneys for Citizens had attended some of the depositions in this case. While the court hesitantly accepts defendant's explanation that it did not realize the need for the motion until preparing its pretrial submissions, it notes that other courts have, on occasion, sanctioned a party viewed as having brought belatedly a motion to dismiss for lack of jurisdiction. *See United States v. Ken Mar Assocs., Ltd.*, 697 F. Supp. 400, 403-04 (W.D. Okla. 1987) (imposing sanctions against the United States after the government filed a successful motion to dismiss for lack of jurisdiction); *see also* RCFC 16(f); *Tracinda Corp. v. DaimlerChrysler AG*, 502 F.3d 212, 243-44 (3d Cir. 2007); 6A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane & Richard L. Marcus, Fed. Prac. & Proc. Civ. § 1531 (3d ed. 2010). That defendant may raise lack of jurisdiction at any time does not mean that it has license to do so in a fashion that interrupts the orderly flow of litigation and unnecessarily imposes costs on an opposing party. The court will endeavor to make this point much clearer in its future pretrial orders.

[17] The court intends to unseal and publish this opinion after June 23, 2011. On or before June 21, 2011, each party shall file proposed redactions to this opinion, with specific reasons therefor.